IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRY KUEHNER, | ) |
| | ) Civil Action No. 09 - 749 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) District Judge David S. Cercone |
| COMMONWEALTH OF PENNSYLVANIA, | ) |
| *BOARD OF PROBATION & PAROLE;* | ) Magistrate Judge Lisa Pupo Lenihan |
| DEPARTMENT OF CORRECTIONS, *S.C.I.* | ) |
| *FAYETTE*; JEFFREY BEARD, *PHD, Secretary of* | ) |
| *Dept .of Corrections;* BRIAN COLEMAN, | ) |
| *Superintendent: Warden S.C.I. Fayette;* MS. JILL | ) |
| MONAS, *Unit Manager, S.C.I. Fayette (A) Bock;* | ) |
| MR. JASON ASHTON, *Counselor (A) Block;* MRS. | ) |
| CAREY HAWK, *Counselor, (A) Block Et, Al 's* | ) |
| | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.  RECOMMENDATION

It is respectfully recommended that Defendants' Motion to Dismiss (doc. no. 19) be granted.

II.  REPORT

Plaintiff, Terry Kuehner, an inmate presently incarcerated at the State Correctional Institution at Fayette, Pennsylvania, commenced this civil rights action complaining about the denial of his petitions for release on parole. He has named the Pennsylvania Board of Probation and Parole (Board), the Pennsylvania Department of Corrections (DOC), SCI-Fayette and DOC employees Beard, Coleman, Monas, Ashton and Hawk as Defendants in ths action claiming that they violated his rights under the 5th, 8th and 14th Amendments of the United States Constitution. Specifically, Plaintiff claims that the DOC Defendants violated his constitutional rights by failing to give him a favorable recommendation for parole and by failing to transfer him to a facility closer to his family

before his mother passed away. Plaintiff claims that the Board violated his rights under the 5th, 8th and 14th Amendments by failing to grant his applications for release on parole. For the reasons that follow, Defendants' Motion should be granted as Plaintiff has failed to state a claim upon which relief may be granted under 42 U.S.C. § 1983.

## A. Standard of Review

A complaint must be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. Additionally, "a civil rights claim 'must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." ' Coronado v. Goord, No. 99 Civ. 1674, 2000 WL 1372834, at *2 (S.D.N.Y. 2000) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987)). *See also* Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a

2

"formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

A court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a section 1983 action, the court must liberally construe a *pro se* litigant's pleadings and 'apply applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.' Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d. Cir. 1999)). "Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution." Higgins, 293 F.3d at 688 (quoting Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)).

### B. Relevant Facts

Plaintiff is a Pennsylvania prisoner currently imprisoned at the State Correctional Institution at Fayette, Pennsylvania. Plaintiff was convicted of Aggravated Assault, a second degree felony, in the Court of Common Pleas of Carbon County and sentenced to a term of from eighteen (18) months to ten (10) years imprisonment. Following the expiration of his minimum sentence date, Plaintiff was eligible for release on parole.[1]

By notice dated March 28, 2007, the Board issued the following decision in regards to Kuehner's parole application.

> As recorded on March 27, 2007, the Board of Probation and Parole rendered the following decision in your case:

---

1. *See* 61 Pa. Stat. §331.21.

> Following an interview with you and a review of your file, and having considered all matters required pursuant to the Parole Act, the Board of Probation and Parole, in the exercise of its discretion, has determined at this time that: Your best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be injured if you were paroled/reparoled. Therefore, you are refused parole/reparole at this time. The reasons for the Board's decision included the following.
>
> Your minimization of the nature and circumstances of the offense(s) committed.
>
> Your refusal to accept responsibility for the offense(s) committed.
>
> Your lack or remorse for the offense(s) committed.
>
> The existence of detainers filed against you.
>
> Your interview with the hearing examiner and/or board member.
>
> You will be reviewed in or after October, 2007.
>
> At your next interview, the Board will review your file and consider:
>
> Whether you have participated in/successfully completed a treatment program for: prescriptive program plan.
>
> Whether you have maintained a favorable recommendation for parole from the Department of Corrections.
>
> Whether you have maintained a clear conduct record and completed the Department of Corrections prescriptive program(s).
>
> Official version of pending charges (detainer) to be available at time of review.

Doc. No. 20-2, pp. 12-13.

By notice dated November 16, 2007, the Board issued the following decision in regards to Kuehner's parole application.

> As recorded on November 16, 2007, the Board of Probation and Parole rendered the following decision in your case:

4

>Following an interview with you and a review of your file, and having considered all matters required pursuant to the Parole Act, the Board of Probation and Parole, in the exercise of its discretion, has determined at this time that: Your best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be injured if you were paroled/reparoled. Therefore, you are refused parole/reparole at this time. The reasons for the Board's decision included the following.
>
>Your minimization of the nature and circumstances of the offense(s) committed.
>
>Your refusal to accept responsibility for the offense(s) committed.
>
>Your lack or remorse for the offense(s) committed.
>
>Reports, evaluations and assessments concerning your mental and behavior condition and history that reflects ongoing risk to the community.
>
>The existence of detainers filed against you.
>
>Your interview with the hearing examiner and/or board member.
>
>You will be reviewed in or after April, 2008.
>
>At your next interview, the Board will review your file and consider:
>
>Whether you have successfully completed a prescriptive program plan.
>
>Whether you have maintained a favorable recommendation for parole from the Department of Corrections.
>
>Whether you have maintained a clear conduct record and completed the Department of Corrections prescriptive program(s).
>
>Status of detainer to be available at time of review.
>
>You may file an application for parole/reparole no sooner than 1 year after the date the last decision denying parole/reparole was recorded.

Doc. No. 20-2, pp. 14-15.

By notice dated April 14, 2008, the Board issued the following decision in regards to Kuehner's parole application.

5

> As recorded on April 14, 2008, the Board of Probation and Parole rendered the following decision in your case:
>
> Following an interview with you and a review of your file, and having considered all matters required pursuant to the Parole Act, the Board of Probation and Parole, in the exercise of its discretion, has determined at this time that: Your best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be injured if you were paroled/reparoled. Therefore, you are refused parole/reparole at this time. The reasons for the Board's decision included the following.
>
> **--** Your minimization of the nature and circumstances of the offense(s) committed.
> -- The negative recommendation made by the prosecuting attorney.
> -- The negative recommendation made by the Department of Corrections.
> -- Your need to participate in and complete additional instituitonal programs.
>
> You will be reviewed in or after 04/2009.
>
> At your next interview, the Board will review your file and consider:
>
> Whether you have successfully completed a treatment program for: mental health problems; prescriptive program plan.
>
> Whether you have received a favorable recommendation for parole from the Department of Corrections.
>
> Whether you have maintained a clear conduct record and completed the Department of Corrections prescriptive program(s).
>
> You may file an application for parole/reparole no sooner than 1 year after the date the last decision denying parole/reparole was recorded.

Doc. No. 20-2, pp. 16-17.

By notice dated May 6, 2009, the Board issued the following decision in regards to Kuehner's parole application.

> As recorded on May 6, 2009, the Board of Probation and Parole rendered the following decision in your case:

6

>Following an interview with you and a review of your file, and having considered all matters required pursuant to the Parole Act, the Board of Probation and Parole, in the exercise of its discretion, has determined at this time that: Your best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be injured if you were paroled/reparoled. Therefore, you are refused parole/reparole at this time. The reasons for the Board's decision included the following.
>
>The negative recommendation made by the Department of Corrections.
>
>Reports, evaluations and assessments or risk indicates your risk to the community.
>
>Your minimization of the nature and circumstances of the offense(s) committed.
>
>The negative recommendation made by the prosecuting attorney.
>
>You will be reviewed in or after April, 2010.
>
>At your next interview, the Board will review your file and consider:
>
>Whether you have received a favorable recommendation for parole from the Department of Corrections.
>
>Whether you have maintained a clear conduct record.
>
>Whether you have completed the department of corrections prescriptive program(s).
>
>Affidavit of probable cause for 1994, 1999 and 2005 arrests to be available at time of review.
>
>You may file an application for parole/reparole no sooner than 1 year after the date the last decision denying parole/reparole was recorded.

Doc. No. 20-2, pp. 18-19.

Plaintiff informs this Court that he has complied with all of the institution's prescribed programs and additional institutional programs. Plaintiff claims that the Board and DOC have abused

their discretion and violated the law by failing to give him a parole recommendation and failing to approve his parole application following the expiration of his minimum sentence.

### C. Liability under 42 U.S.C. § 1983

Plaintiff's Complaint seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). Plaintiff's claims are discussed below.

### D. Due Process

Plaintiff first asserts a violation of his right to due process. However, his assertions, taken as true, do not state a violation of his due process rights, either procedurally or substantively. "Due process" is guaranteed through the Fourteenth Amendment of the United States Constitution. The pertinent language of the Amendment provides as follows.

> Section 1.    All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside.  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amend. XIV, § 1 (emphasis added).

The Due Process Clause was promulgated to secure the individual from the arbitrary exercise of the powers of government. The "procedural" aspect of the Due Process Clause requires the government to follow appropriate procedures to promote fairness in governmental decisions; the

8

substantive aspect of the Clause bars certain government actions regardless of the fairness of the procedures used to implement them so as to prevent governmental power from being used for purposes of oppression. Daniels v. Williams, 474 U.S. 327, 329-33 (1986). (citations omitted.)

The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing, before the government can deprive an individual of a liberty or property interest. To establish a procedural due process violation, a person must demonstrate that he has been deprived of a constitutionally-protected property or liberty interest. Daniels v. Williams, 474 U.S. 327, 339 (1986). If a person does not have a constitutionally-protected interest, he or she is not entitled to the procedural protections afforded by the Due Process Clause.

A constitutionally-protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt v. Helms, 459 U.S. 460, 466 (1983). A liberty interest "inherent" in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Liberty interests that fall within this category include the revocation of parole, Morrissey v. Brewer, 408 U.S. 471 (1972), and the revocation of probation, Gagnon, 411 U.S. at 778. However, the granting of parole prior to the expiration of a prisoner's maximum term is **NOT** a constitutionally-protected liberty interest that is inherent in the Due Process Clause. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).

Similarly, the United States Supreme Court has made it clear that the due process clause provides constitutional safeguards prior to conviction, but, upon a valid conviction, it does not provide a federal liberty interest guaranteeing housing in a particular penal institution or providing

9

protection against transfer from one institution to another within the state prison system.  Meachum v. Fano, 427 U.S. 215, 224-225 (1976); Montanye v. Haymes, 427 U.S. 236 (1976).

Moreover, the Pennsylvania Probation and Parole Act, 61 Pa. Stat. 331.1, *et. seq.*, does not grant Pennsylvania state prisoners any constitutionally-protected liberty interest in being released on parole prior to the expiration of their maximum terms.[2]  Pennsylvania law unambiguously provides that a prisoner is not entitled to release from prison until the expiration of his maximum sentence.[3] Nothing in the Pennsylvania Parole Act (or any other provision of Pennsylvania law) requires the Board to release a prisoner on parole prior to the expiration of his maximum term.  The Board has complete discretion to determine whether an inmate is sufficiently rehabilitated such that he will be permitted to serve the remainder of his sentence outside the prison walls on parole.  Although a prisoner is eligible for parole at the end of his minimum term, nothing in Pennsylvania law or the United States Constitution requires a prisoner to be released at such time.[4]

---

2.  *See, e.g.*, McFadden v. Lehman, 968 F. Supp. 1001, 1004 (M.D. Pa. 1997) (Pennsylvania has not created an enforceable liberty interest in parole, rehabilitative pre-release programs, or in therapy programs); Rodgers v. Parole Agent SCI-Frackville, Wech, 916 F. Supp. 474, 476 (E.D. Pa. 1996); McCrery v. Mark, 823 F. Supp. 288 (E.D. Pa. 1993); Rogers v. Pennsylvania Bd. of Probation and Parole, 555 Pa. 285, 724 A.2d 319 (1999) (holding that the grant of parole for Pennsylvania prisoners is nothing more than a possibility; it merely constitutes favor granted by the state as a matter of grace and mercy); Tubbs v. Pennsylvania Bd.. of Probation and Parole, 620 A.2d 584, 586 (Pa. Commw. Ct. 1993) ("it is well settled under Pennsylvania law that a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his sentenced maximum term . . . the [Board] makes each decision on a case by case basis, and prisoners have no guarantees that parole will ever be granted"), *appeal denied*, 637 A.2d 295 (Pa. 1993).

3 A prisoner's sentence is his maximum term.  Krantz v. Pennsylvania Bd. of Probation & Parole, 86 Pa. Commw. 38, 41, 483 A.2d 1044, 1047 (1984).  The significance of the minimum sentence is that it establishes a parole eligibility date; the only "right" that can be asserted upon serving a minimum sentence is the "right" to apply for parole and to have that application duly considered by the Board.  *Id*.

4.  The existence of a state parole system alone does not create a constitutionally-protected
(continued...)

Similarly, Pennsylvania prisoners do not have any state created interest in specific housing. Johnson v. Hill, 910 F.Supp. 218, 220 (E. D. Pa. 1996) (holding that prisoner placement is a matter of prison administration and a prisoner has no constitutional right to be placed in any particular cell or housing unit. Moreover, Pennsylvania code clearly states that an inmate does not have a right to be housed in a particular facility. 37 Pa.Code § 93.11(a). Thus, Plaintiff has no state created liberty interest to be incarcerated in a particular institution. Jerry v. Williamson, 211 Fed. Appx 110, 112 (3d Cir. 2006).

As noted by the Court of Appeals for the Third Circuit:

> The Parole Board's consideration of Thorpe's parole applications is sufficient for Fourteenth Amendment due process purposes because "[t]here is no constitutional right or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 464 (1981) (quoting Greenholtz v. Inmates of Neb. Penal. & Corr. Complex, 442 U.S. 1, 7 (1979)). While "States may under certain circumstances create liberty interests which are protected by the Due Process Clause," Sandin v. Conner, 515 U.S. 472, 483-84 (1995), the Pennsylvania Supreme Court has long held that "a denial of parole does not implicate a constitutionally protected liberty interest." Coady v. Vaughn, 564 Pa. 604, 770 A.2d 287, 291 (Pa. 2001); *see also* Rogers v. Pa. Bd. of Prob. & Parole, 555 Pa. 285, 724 A.2d 319, 322-23 (Pa. 1999) (affirming Parole Board's discretion to grant or deny parole because "parole is a matter of grace and mercy shown to a prisoner who has demonstrated to the Parole Board's satisfaction his future ability to function as a law-abiding member of society upon release before the expiration of the prisoner's maximum sentence").

Thorpe v. Grillo, 80 Fed. App'x 215, 219 (3d Cir. 2003).

The discussion above makes patently clear that Plaintiff does not have a constitutionally-protected liberty interest in release on parole that arises under state law. Because a Pennsylvania prisoner has no liberty interest in obtaining parole, he cannot complain of the constitutionality of

---

4(...continued)
 interest. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).

procedural devices attendant to parole decisions.  <u>Burkett v. Love</u>, 89 F.3d 135, 141 (3d Cir. 1996); <u>Rodgers v. Parole Agent SCI-Frackville, Wech</u>, 916 F. Supp. 474, 476 (E.D. Pa. 1996).  Nor can he make a due process claim regarding DOC's unfavorable parole recommendation decision or decision not to transfer him to another facility.  Accordingly, Plaintiff cannot state a claim upon which relief may be granted based on a violation a his procedural due process rights with respect to denial of his application for parole.

The constitutional right to "substantive due process" protects individuals against arbitrary governmental action, regardless of the fairness of the procedures used to implement them.[5]  Several courts, including the Court of Appeals for the Third Circuit, recognize that, even though an inmate has no protectable liberty interest in parole that implicates procedural due process, his substantive due process rights may be violated if parole is denied by arbitrary government action.[6]  In this regard, courts have determined that decisions to grant or deny parole may violate a prisoner's right to substantive due process if such decisions are based on arbitrary and capricious factors.  The Supreme Court has declined to set forth a precise rule that defines the scope of impermissible "arbitrary" conduct for purposes of applying the substantive component of the Due Process Clause.  Nonetheless, the Court recently clarified that governmental conduct does not violate a person's substantive due process rights unless it amounts to an abuse of official power that "shocks the conscience."  <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998).

---

[5] <i>See also</i> <u>Collins v. Harker Heights</u>, 503 U.S. 115, 126 (1992) (the Due Process Clause was intended to prevent government officials from abusing power, or employing it as an instrument of oppression); <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government.").

[6]. <i>See, e.g.</i>, <u>Monroe v. Thigpen</u>, 932 F.2d 1437, 1442 (11th Cir. 1991); <u>Newell v. Brown</u>, 981 F.2d 880, 886 (6th Cir. 1992), <i>cert. denied</i>, 510 U.S. 842 (1993); <u>Block v. Potter</u>, 631 F.2d 233, 236 (3d Cir. 1980); <u>Carter v. Kane</u>, 938 F. Supp. 282 (E.D. Pa. 1996).

Liberally construed and taken as true, Plaintiff's allegations do not state a violation of his substantive due process rights with respect to the Board's action in refusing to grant his parole application and the unfavorable parole recommendation decision. The Board is vested with broad discretion to grant or deny parole. In making such decisions, the Board's foremost consideration is the protection of the safety of the public. 61 Pa. Stat. §331.1. In granting parole, the Board is required to consider the nature and character of the offense committed, the general character and history of the prisoner, the written or personal statement or testimony of the victim or victim's family, and the recommendations of the trial judge, the district attorney and of each warden or superintendent who has had control over the applicant. 61 Pa. Stat. § 331.19. Moreover, the Board is prohibited from granting parole unless the Commonwealth will not be injured thereby. *See* 61 Pa. Stat. § 331.21(a). Likewise, DOC and its employees enjoy broad discretion in making parole recommendation determinations.

In denying a prisoner's substantive due process claim in a similar context, the United States District Court for the Eastern District of Pennsylvania held as follows.

> In Pennsylvania, the Board, in exercising its discretion, is expressly directed to investigate the "mental and behavior condition and history" of a parole applicant and to consider the "character of the offense committed." 61 Pa.C.S.A. § 331.19. These criteria bear a rational relation to rehabilitation and deterrence. The reasons given by the Board for denial of parole--(1) substance abuse, (2) assaultive instant offense, (3) very high assaultive behavior potential, (4) victim injury, and (5) your [petitioner's] need for counseling and treatment--and the documents reviewed by the Board, disclosed that it considered those factors in exercising its discretion. The Court does not find that there has been any abuse of discretion.

Bonilla v. Vaughn, Civil No. 97-7440, 1998 WL 480833, at *10 (E. D. Pa. Aug. 14, 1998).

In Plaintiff's case, the Board's reasons for denying his parole application are, on the face of them, in accordance with its statutory mandate to protect the well being of the Commonwealth's citizens. Without a doubt, the safety of the public and the interests of the Commonwealth are injured

13

by releasing prisoners who require additional treatment programs or other types of counseling. In reviewing the Board's exercise of discretion in denying an application for parole, this Court's only role "is to insure that the Board followed criteria appropriate, rational and consistent with the statute and that its decision is not arbitrary and capricious nor based on impermissible considerations." Block, 631 F.2d at 236.

The Board identified legitimate reasons for exercising its discretion in denying Plaintiff's applications for early release from prison. In considering Plaintiff's ability to serve the remainder of his prison sentence on parole, the Board followed its statutory directive. Plaintiff does not allege that he was denied parole or a parole recommendation based on unconstitutional criteria such as race or religion. Nothing in the record before this court suggests that the Board or DOC exercised its discretion in either an arbitrary or capricious manner. Although Plaintiff alleges that he completed all of his prescribed treatment programs, the Board clearly indicated that he needed to participate in and complete additional institutional programs. "[T]he Board's decision that Plaintiff may require continued participation in a prescriptive program does not constitute an arbitrary or capricious decision." Banks v. Pennsylvania Bd. of Probation and Parole, Civil No. 03-6676, 2004 WL 906296, at *4 (E. D. Pa. April 28, 2004).

Plaintiff alleges that the DOC Defendants are biased against him because he was approved for parole three times while he was housed on D Block but he was denied parole when he was housed on A Block. The record reflects, however, that the DOC rescinded its favorable parole recommendation based on information it received from the Pennsylvania State Police (doc. no. 20-2, p. 7). As such, Plaintiff has failed to demonstrate that he is entitled to relief under the substantive prong of the Due Process Clause. *Accord* Shaffer v. Meyers, 338 F.Supp.2d 562, 566 (M.D. Pa. 2004) ("On the basis of the record before the court, and the stated reasons for the Parole Board's

denial of parole, the court concludes that there was a rational basis for the denial of parole."); Cohen v. Pennsylvania Bd of Probation and Parole, 1998 WL 834101 (E.D. Pa. Dec. 2, 1998) (holding that the denial of parole despite recommendation from prison psychiatrist does not state a violation of substantive due process).[7]

### E. Equal Protection

Nor does Plaintiff allege a violation of his equal protection rights. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.' " Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985)).

The level of scrutiny applied to ensure that classifications comply with this guarantee differs depending on the nature of the classification and the nature of the rights involved. Classifications involving suspect or quasi-suspect class, or actions that impact certain fundamental constitutional rights, are subject to heightened or "strict" scrutiny. City of Cleburne, 473 U.S. at 439. Other classifications are subject to the "rational basis" test, which requires that a classification need only be rationally related to a legitimate state interest to survive an equal protection challenge. F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993) (state action that does not affect a suspect category or infringe on a fundamental constitutional right must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification); Chapman v. United States, 500 U.S. 453, 465 (1991).

---

7. *See also* Bonilla v. Vaughn, 1998 WL 480833 (E.D. Pa. Aug. 14, 1998); Maloy v. Vaughn, Civil No. 97-7355, 1998 WL 426561 (E.D. Pa. July 28, 1998); Bradley v. Dragovich, Civil No. 97-7660 1998 WL 150944 (E.D. Pa. Mar 27, 1998).

With respect to the first issue, it is well settled that prison inmates are not a suspect class. *See e.g.,* Nicholas v. Tucker, 114 F.3d 17, 20 (2d Cir. 1997) (inmates are not suspect class so as to require more exacting scrutiny), *cert. denied*, 523 U.S. 1126 (1998); Hampton v. Hobbs, 106 F.3d 1281, 1286 (6th Cir. 1997); Zehner v. Trigg, 133 F.3d 459, 463 (7th Cir. 1997). Plaintiff's records indicate that he is Caucasian. Moreover, there is no fundamental constitutional right to parole. *See* Fox v. Stotts, 203 F.3d 834 (Table), 2000 WL 84899, *2 (10th Cir. Jan. 27, 2000); Mayner v. Callahan, 873 F.2d 1300, 1302 (9th Cir. 1989) (stating that prisoners are not a suspect class and parole consideration is not a fundamental right requiring a higher level of scrutiny). Therefore, the Board's parole guidelines are subject to the general rule that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. City of Cleburne, 473 U.S. at 440.

The Board's decision requiring additional treatment before granting Plaintiff's application for parole bears a rational relationship to the legitimate state interest of ensuring public safety. Moreover Plaintiff has not demonstrated that other similarly situated inmates are treated differently either by the Board or by DOC and its employees. Thus, he is not entitled to relief under the Equal Protection Clause.

### F. Fifth Amendment

Plaintiff also seeks to impose liability under the Fifth Amendment. In this regard, the Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." This right is referred to as the Fifth Amendment privilege against self-incrimination. The Supreme Court has instructed that "[t]he [Fifth] Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or

16

informal, where the answers might incriminate him in future criminal proceedings." Lefkowitz v. Turley, 414 U.S. 70, 77 (1973). Furthermore, the Fifth Amendment privilege provides protection against the imposition of substantial penalties on a person who decides to invoke his right against self-incrimination. Minnesota v. Murphy, 465 U.S. 420, 434 (1984).

Plaintiff does not state a violation of his Fifth Amendment rights, however, as the Board's "acceptance of responsibility" requirement would not be considered "compelled" testimony within the meaning of the Fifth Amendment. In this regard, in Ohio Adult Parole Authority v. Woodard, 523 U.S. 272, 286 (1998), a unanimous Court held that a voluntary interview with the Ohio Clemency Board did not amount to "compelled" testimony for purposes of the Fifth Amendment. In making this conclusion, the Court observed that the Plaintiff already was under a lawfully-imposed sentence of death. If clemency was granted, he would have obtained a benefit; if it was denied, he would be in no worse position than he was before. The Court concluded that the pressure to speak in the hope of improving his chance of being granted clemency did not make the interview compelled. *Id*. at 285-286.

In McKune v. Lyle, 536 U.S. 24 (2002), the Supreme Court extended this principal to participation in sex offender treatment programs (SOTP). In that case, the Supreme Court held that the adverse consequences faced by a state prisoner for refusing to make admissions required for participation in a SOTP were not so severe as to amount to compelled self-incrimination because the prisoner's refusal did not extend his prison term or affect his eligibility for good time credits.

Similarly, in the case at bar, Plaintiff is serving a lawfully-imposed sentence: if parole is granted, he would obtain a benefit; if it is denied, he is in no worse position than he was before. The pressure to accept responsibility for the crimes for which he was convicted in order to improve his chances for parole does not make his admissions "compelled" for purposes of the Fifth Amendment.

*See* Thorpe v. Grillo, 80 Fed. Appx. 215, 2003 WL 22477890 (Table) (3d Cir. 2003) (holding that the Pennsylvania Department of Corrections (DOC) policy of excluding from the SOTP those inmates who do not admit guilt to the offense did not violate an inmate's Fifth Amendment right against self-incrimination); Ainsworth v. Stanley, 317 F.3d 1 (1st Cir. 2002) (upholding District Court decision holding no 5th Amendment violation when parole is denied based on inmate's inability to participate in SOTP due to failure to admit to criminal offenses).

Moreover, notwithstanding the prohibition on the state of penalizing a person who invokes his Fifth Amendment right, prison officials may constitutionally deny benefits to a prisoner who, by invoking his privilege against self-incrimination, refuses to make statements necessary for his rehabilitation, as long as their denial is based on the prisoner's refusal to participate in his rehabilitation and not his invocation of his privilege. *See, e.g.,* Doe v. Sauer, 186 F.3d 903, 906 (8th Cir. 1999); McMorrow v. Little, 109 F.3d 432, 436 (8th Cir. 1997) (citing Asherman v. Meachum, 957 F.2d 978, 980-83 (2d Cir. 1992)).

### G. Eighth Amendment

As a final matter, Plaintiff seeks to impose liability under the Eighth Amendment, which protects individuals against the infliction of "cruel and unusual punishments." This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

Notwithstanding, not every injury raises constitutional concerns. A prison official violates the Eighth Amendment only when two requirements are met. The inmate must show that: 1) he

suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk. Farmer, 511 U.S. at 834. The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." *Id*. In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. Helling v. McKinney, 509 U.S. 25, 35 (1993).

The second criterion, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind. The Supreme Court clarified this deliberate indifference standard in Farmer as follows.

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-838 (emphasis added).

Plaintiff's allegations do not show that he was deprived of any basic human need such as food, clothing, shelter, sanitation, medical care or personal safety. Nor do they show that any defendant acted, if at all, with deliberate indifference. The Constitution does not mandate

comfortable prisons. Rhodes, 452 U.S. at 349. Prisons housing "persons convicted of serious crimes cannot be free of discomfort." *Id*. Plaintiff's allegations, construed in the broadest possible sense, do not rise to the level of a Eighth Amendment violation.

In light of the authority discussed above, this Court concludes that the Complaint fails to state a claim upon which relief may be granted.

### III. CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Defendants' Motion to Dismiss (doc. no. 19) be granted.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B) & (C)] and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response. A party's failure to file timely objections may constitute a waiver of that party's appellate rights.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

Dated May 7, 2010

cc:     Terry Kuehner
        GM-4552
        SCI Fayette
        Post Office Box 9999
        LaBelle, PA 15450-0999